# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MARYSE AUGUSTIN,
                Appellant,

        v.

FEDERAL DEPOSIT INSURANCE
    CORPORATION,
                Agency.

DOCKET NUMBER
NY-3443-15-0124-I-1

DATE: January 4, 2016

## THIS ORDER IS NONPRECEDENTIAL[1]

Maryse Augustin, Flushing, New York, pro se.

William S. Jones, Esquire, Arlington, Virginia, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed her appeal for lack of jurisdiction. For the reasons set forth below, we GRANT the petition for review, VACATE the initial decision, and REMAND the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

case to the New York Field Office for further adjudication in accordance with this Order.

## BACKGROUND

¶2      Effective March 28, 1997, the agency removed the appellant from her Bank Examiner position for failing to follow the directions of her immediate supervisor and conducting herself in an unprofessional manner. Initial Appeal File (IAF), Tab 1 at 21. She filed an appeal of her removal with the Board, and the administrative judge issued an initial decision affirming the removal action. *Augustin v. Federal Deposit Insurance Corporation*, MSPB Docket No. NY-0752-97-0524-I-1, Initial Decision (0524-I-1 ID) (June 8, 1998). The appellant did not file a petition for review of that decision.

¶3      On October 4, 2010, the appellant wrote to the agency alleging, among other things, that it was placing "post-employment restrictions" on her. IAF, Tab 1 at 7-8. The agency responded that it had not imposed any post-employment restrictions on the appellant and informed her that she could consider applying to the Office of Personnel Management (OPM) for disability retirement benefits. *Id.* at 6. She subsequently wrote to OPM on or about November 18, 2010, and requested consideration for disability benefits "based upon [the] emotionally charged issues involved" and a waiver of the time limit for applying. *Id.* at 5. In a response letter dated December 8, 2010, OPM requested further identifying information from the appellant. *Id.* at 4.

¶4      The appellant filed this appeal on February 26, 2015, and requested a hearing. *Id.* at 1-2, 26-36. She indicated that she is appealing "employment restrictions" and seeking closure. *Id.* at 1, 29, 35. Specifically, she claimed that, since her removal in 1997, the agency has harassed her in various ways. *Id.* at 2, 30, 35; IAF, Tab 4. She further alleged that, in 2011, the agency offered her a "disability package," which she refused, apparently because of an alleged stipulation that she must work for 30 days at a post office. IAF, Tab 1 at 1, 30,

35. She submitted evidence of a completed disability retirement application with the relevant portions completed by the agency between March and June 2011; however, it is unclear whether the application was ever submitted to OPM. *Id.* at 3-25. Finally, she expressed her preference for a cash settlement rather than obtaining disability retirement. *Id.* at 2, 30, 36; IAF, Tab 4.

¶5 The administrative judge issued a notice and order apprising the appellant of her jurisdictional burden of proof and directing her to respond on the jurisdictional issue. IAF, Tab 3. The administrative judge also explained the disability retirement application process. *Id.* In the appellant's response, she gave several reasons why she believed that the Board has jurisdiction over her appeal. IAF, Tab 4. She subsequently reiterated her request for a hearing. IAF, Tab 5.

¶6 Without holding the requested hearing, the administrative judge dismissed the appeal based on her finding that the appellant failed to establish the Board's jurisdiction. IAF, Tab 8, Initial Decision (ID) at 1, 5. She noted that the appellant did not provide proof that she submitted the disability retirement forms to OPM or that she received a final decision from OPM. The administrative judge also explained that the appellant's initial appeal of the 1997 removal was fully adjudicated and was no longer before the Board. ID at 4. The administrative judge then found that there was no appealable action before the Board and that the appellant's allegations of identity theft, schemes, and scams were beyond the Board's purview. ID at 4-5. She further found that the Board lacked the authority to compel the agency to enter into a settlement agreement with the appellant. ID at 5.

¶7 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has not responded.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8     Although we agree with the administrative judge's analysis in concluding that the appellant failed to establish the Board's jurisdiction, we are remanding the case for further development of the record and adjudication consistent with this decision.  Specifically, we direct the administrative judge to apply the procedures established in *French v. Office of Personnel Management*, 37 M.S.P.R. 496, 499 (1988) (finding that, in a disability retirement appeal, the Board has the authority to request pro bono representation for an appellant who asserts that he or she is incompetent).  We further direct the administrative judge to consider whether the agency had an obligation to file a disability retirement application on behalf of the appellant under 5 C.F.R. § 844.202(a).  Finally, we direct the administrative judge to join OPM as a party to this case and determine whether OPM received the appellant's disability retirement application and, if so, whether OPM made a decision on her application.  *See Dixon v. U.S. Postal Service*, 89 M.S.P.R. 148, 151, ¶¶ 4-5 (2001) (finding that there must be a cooperative undertaking between the Board, the employing agency, and OPM to assure that an employee of likely mental incapacity would not suffer impairment of her rights to disability retirement benefits due to her incapacity, and so the administrative judge was authorized to join OPM as a party to the appeal, if he determined that such a step was appropriate or necessary).

The record regarding the appellant's mental health from her prior removal appeal supports a decision to apply *French* procedures.

¶9     It is "the obvious desire of Congress that employees who become disabled during honorable service as a result of mental incompetence not lose their entitlements because of the effects of their illness." *Hall v. Office of Personnel Management*, 85 M.S.P.R. 371, ¶ 9 (2000).  In *Jones v. Department of Housing & Urban Development*, 87 M.S.P.R. 269 (2000), the Board relied on the nature of the appellant's pleadings before the Board and "indications of aberrant behavior"

before the agency that might have contributed to her removal to find that *French* procedures should be applied, *id.*, ¶¶ 5, 11.

¶10     Based on our extensive review, the same or similar factors present in *Jones* are present here. We note, for instance, that the appellant made numerous assertions in the removal appeal that indicate that she was suffering from a mental or psychological condition. 0524-I-1 ID at 2.[2] The appellant's presentation was such that the administrative judge raised the issue of whether a disabling condition was involved but noted that she could not order a medical examination in the context of that removal appeal. 0524-I-1 ID at 4. The administrative judge nevertheless properly considered the evidence of the appellant's mental health in her analysis of the *Douglas* penalty factors. 0524-I-1 ID at 12. She specifically credited the testimony of the agency's employee assistance counselor, who had a master's degree in clinical psychology and was licensed to perform psychological examinations.[3] 0524-I-1 ID at 4, 12, 24. The counselor met the appellant and they had numerous conversations. 0524-I-1 ID at 3. Relying on the counselor's observations, the administrative judge concluded that the appellant needed professional help.[4] *Id.* The administrative judge also found that agency officials indicated that they had serious doubts about the appellant's mental health issues before they removed her and that that the appellant's situation was not simply one of "ordinary" misconduct. 0524-I-1 ID at 21-22. Additionally, according to the retirement paperwork the appellant completed in 2011, she only had two short

---

[2] Page numbers referring to the initial decision in MSPB Docket No. NY-0752-97-0524-I-1 are based on the hard copy of the Westlaw version of the decision. 1998 WL 1982078 (June 8, 1998).

[3] The counselor also was a certified drug and alcohol therapist and an experienced employee assistance counselor with numerous Federal agencies and private companies. 0524-I-1 ID at 3. She had served in community health centers, family service organizations, drug and alcohol treatment programs in a psychiatric hospital, and two general hospitals. *Id.*

[4] Later, as the appellant's situation at work unfolded, the counselor "became concerned and viewed the situation as more serious than she initially believed." 0524-I-1 ID at 3.

stints of work with the Department of Commerce after she was removed in 1997 from the Bank Examiner position. IAF, Tab 1 at 13-14. There is no information in the record regarding the details of this brief employment or the reasons it did not continue.

¶11 Under the circumstances, we find that the application of *French* procedures is appropriate. *See French*, 810 F.2d at 1119-20; *see also Vanieken-Ryals v. Office of Personnel Management*, 508 F.3d 1034, 1040-44 (Fed. Cir. 2007) (holding that objective medical evidence is not required to establish disability); *Hall*, 85 M.S.P.R. 371, ¶¶ 9-10; *Woods v. Office of Personnel Management*, 59 M.S.P.R. 1, 3 (1993) (remanding with instructions to find representation for an appellant before determining whether he had been competent when his appeal was initially decided because the "fundamental unfairness described by the court in *French* . . . may exist").

¶12 In sum, considering the nature of the appellant's pleadings, the administrative judge's findings in the removal appeal suggesting a mental health condition, and the other evidence (including medical evidence) mentioned above, we find that the administrative judge must apply *French* procedures to assist the appellant in her efforts at seeking disability retirement. *See Harris v. Department of Veterans Affairs*, 142 F.3d 1463, 1471 (Fed. Cir. 1998) ("[w]hen the Board is on notice of a person's likely incapacity in connection with a disability retirement application, it must enforce the rules it established in *French* for such cases").

The administrative judge, on remand, must determine whether the agency was obligated to file for disability retirement on the appellant's behalf.

¶13 Section 8451(a)(1)(A) of title 5 of the U.S. Code permits agencies to file disability retirement applications for their employees under the Federal Employees' Retirement System (FERS).[5] The implementing regulation provides that an agency "must" file a disability retirement application for an employee who

_____

[5] The appellant's Standard Form 50 indicates that she was an employee under FERS. IAF, Tab 1 at 21.

has 18 months of Federal civilian service[6] when the following five conditions are met: (1) the agency has issued a decision to remove an employee; (2) the agency concludes, after its review of medical documentation, that the cause for unacceptable performance, attendance, or conduct is disease or injury; (3) the employee is institutionalized, or the agency concludes, based on a review of medical and other information, that the employee is incapable of making a decision to file an application for disability retirement; (4) the employee has no personal representative or guardian; and (5) the employee has no immediate family member who is willing to file an application on his or her behalf. 5 C.F.R. § 844.202(a).

¶14    We find that the record in this case raises the question of whether these regulatory requirements were met and thus triggered the agency's obligation to file a disability retirement application. In so finding, we rely on the following factors: (1) the appellant's pro se status; (2) the appellant's correspondence with OPM on or about November 18, 2010, expressing a desire for disability benefits and a waiver of the time limit based on emotional issues; (3) her completed disability retirement application; and (4) evidence in the record of her appeals suggesting her possible mental incapacity.

¶15    As to evidence in the record of the appellant's mental incapacity in her appeals, we note that the administrative judge found that the appellant's mental health condition played a role in the misconduct that led to her removal and that agency management was not credible in denying that fact. 0524-I-1 ID at 12. The administrative judge also indicated that the appellant's condition may have rendered her unable to recognize the need for treatment. *Id.* She found, too, that the agency managers knew of the counselor's opinion that the appellant needed

---

[6] We note without finding that the appellant appears to have met the 18-month service requirement and was employed under FERS when she was removed for reasons the administrative judge found were related to her condition. IAF, Tab 1 at 13, 21; 0524-I-1 ID at 12. *See generally Angel v. Office of Personnel Management*, 122 M.S.P.R. 424, ¶ 5 (2015) (stating the current criteria for a FERS disability retirement annuity).

professional help, based on the counselor's observation of the appellant. *Id.* The administrative judge determined as well that, even absent the counselor's assessment, certain agency officials were simultaneously questioning the appellant's mental state and believed that her removal was not simply a matter of "ordinary" misconduct. *Id.*

¶16    This evidence and the administrative judge's findings seem to raise a genuine question as to whether the agency was obligated to file a disability retirement on the appellant's behalf. *See Harris*, 142 F.3d at 1471-72 (remanding for the Board to determine whether the agency had neglected its duty to file for disability retirement on the appellant's behalf because there was substantial reason to suspect that the regulatory conditions had been satisfied); *Jones*, 87 M.S.P.R. 269, ¶ 12 (directing the administrative judge to develop the record on whether the agency was obligated to apply for disability retirement on the appellant's behalf); *see also Lizut v. Department of the Army*, 717 F.2d 1391, 1393-95 (Fed. Cir. 1983) (reasoning that, because it is OPM's responsibility to determine entitlement to disability retirement benefits, the evidence need not uncontrovertibly establish a disabling condition before the employing agency is obligated to apply for the appellant).

¶17    Further, although it is true that the appellant's failure to seek treatment was a factor in the administrative judge's decision to uphold her removal, 0524-I-1 ID at 12, this would not necessarily bar her from obtaining disability retirement benefits, given that an appellant's refusal to seek treatment may be a symptom of her psychiatric illness, *Frontan v. Office of Personnel Management*, 90 M.S.P.R. 427, ¶ 12 (2001) ("[T]he very mental condition causing disability may be what leads an employee to refuse a psychiatric examination.") (citing *Lizut*, 717 F.2d at 1394).

¶18    Similarly, even though the appellant claimed on her disability retirement application that she was not disabled, this claim is counterintuitive and actually seems to support the proposition that she requires assistance in pursuing a

disability retirement appeal. IAF, Tab 1 at 17; *see, e.g.*, *Harris*, 142 F.3d at 1470-71 (finding that the appellant's refusal to explain why he was disabled on his disability retirement application and the fact that he did not consider himself disabled, along with other evidence, strongly suggested that he was incapable of making a decision to file and pursue a disability retirement application); *Hall*, 85 M.S.P.R. 371, ¶ 21 (contemplating that an appellant's failure to assert incompetence could itself be a manifestation of that incompetence).

¶19     On remand, the administrative judge must develop the record further to resolve these questions. These issues were not explored below because the case was dismissed for lack of jurisdiction.

The administrative judge, on remand, must join OPM as a party to determine a jurisdictional issue in this appeal.

¶20     Finally, there remains an issue of whether the Board has jurisdiction over this appeal based on OPM's failure to act on the appellant's written request for retirement benefits in 2010. It is undisputed that the appellant wrote a letter to OPM on November 18, 2010, requesting disability retirement benefits and a waiver of the application time limit due to the "emotionally charged issues involved."[7]   IAF, Tab 1 at 5. The existing record shows that OPM never treated this letter as an application for benefits, and OPM did not render a decision of any kind. Rather, OPM treated this letter as an unclear request for retirement records.[8]  *Id.* at 4. OPM's reply neither acknowledged the appellant's request for

---

[7] The appellant seems to have done so on the suggestion of the agency's Senior Advisor to the Human Resources Director, who advised her that she should consider applying for disability benefits and could seek a waiver of the time limit "based upon emotional or mental stress that [she] may have suffered during and after [her] employment with the FDIC." IAF, Tab 1 at 6.

[8] OPM's handling of the appellant's brief letter, which could reasonably be interpreted as a request for disability retirement benefits, may be explained by the fact that it was addressed to OPM's records center in Boyers, Pennsylvania. IAF, Tab 1 at 5.

benefits nor told her how to direct her request for disability retirement.[9] *Id.* Based on these facts, it is possible that OPM's handling of the appellant's letter may be inconsistent with its own policies. *See* 5 C.F.R. § 844.201(a)(3) (suggesting that OPM will not reject a disability retirement application because it is submitted by letter or other form not prescribed by OPM, but, rather, will postpone adjudication of the request until the proper forms are submitted).

¶21 We find that OPM's actions under the circumstances unwittingly failed to address the appellant's 2010 disability retirement request, especially in light of the indications, mentioned above, that she is suffering from a mental health illness. We also find that, in circumstances somewhat similar to those presented here, the U.S. Court of Appeals for the Federal Circuit in *Byrum v. Office of Personnel Management*, 618 F.3d 1323 (Fed. Cir. 2010), remanded the case and noted that "the Board has jurisdiction to consider a matter not addressed by OPM if the Board's failure to do so 'could effectively prevent an appellant from obtaining an adjudication of his claim.'" *Id.* at 1332-33 (quoting *McLaughlin v. Office of Personnel Management*, 62 M.S.P.R. 536, 546-47 (1994), *aff'd*, 47 F.3d 1181 (Fed. Cir. 1995)). The court stated that remand was necessary to ensure that the appellant "was given a fair opportunity to make her case, and have it decided according to law." *Byrum*, 618 F.3d at 1332-33.

¶22 Finally, we point out that, although the appellant's disability retirement application is likely untimely, OPM has the authority to grant a waiver of the time limit based on mental incompetence under 5 U.S.C. § 8453, as the appellant in *French* tried to argue. *See French*, 810 F.2d at 1118-20. In *French*, the Federal Circuit held that it was an abuse of discretion to dismiss as untimely a mentally

---

[9] The record reflects that the appellant seems confused about the application process, the benefits potentially available to her, and the roles of OPM and her employing agency. As stated above, she seems to be under the misimpression that she was offered a disability package by her former employing agency as a settlement, which she declined because she mistakenly believed she would be required to work at her local post office for 30 days. IAF, Tab 1 at 1.

incompetent individual's pro se claim for disability retirement benefits. *Id.* at 1119. The administrative judge, on remand, should explore and then make findings on the timeliness issue in light of the considerations discussed herein.

## ORDER

¶23        Accordingly, we remand this case to the New York Field Office for further adjudication in accordance with the instructions contained in this Remand Order.

FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.